ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 MAR 29 P 3: 49

CLERK _C.Adams_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

ALTON L. JONES,                          )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )    CV 310-011
                                         )
MICHAEL J. ASTRUE, Commissioner          )
of Social Security Administration,       )
                                         )
        Defendant.                       )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Alton L. Jones ("Plaintiff"), appeals the decision of the Commissioner of Social

Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

under the Social Security Act. Upon consideration of the briefs submitted by both parties,

the record evidence, and the relevant statutory and case law, the Court **REPORTS** and

**RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's

final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for

further consideration in accordance with this opinion.

## I.    BACKGROUND

Based on claims of disability dating back to July 2, 2003, Plaintiff protectively

applied for DIB on December 11, 2006. Tr. ("R."), pp. 127-34. The Social Security

Administration denied Plaintiff's application initially and on reconsideration. R. 52-53.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held

a hearing on June 2, 2009. R. 24-51. Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. R. 28-42. The ALJ also heard testimony from a vocational expert ("VE") at the hearing. R. 42-51. On July 22, 2009, the ALJ issued an unfavorable decision. R. 11-21.

Applying the five step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. There is no definitive evidence that the claimant has engaged in substantial gainful activity since July 22, 2003, the alleged onset date (20 C.F.R. §§ 404.1520(b) & 1571 *et seq.*).

2. The claimant has the following severe impairments: degenerative joint disease of the right knee; degenerative disc disease of the lumbar spine; and degenerative joint disease of the left foot 5th metatarsal-phalangeal joint; and morbid obesity (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 1525 & 1526).

4. [T]he claimant has the residual functional capacity to perform medium work[1] except he cannot bend, kneel, squat, crawl, or climb stairs or ramps more than occasionally and can never climb ladders and scaffolds, and he must avoid frequent exposure to workplace hazards (*e.g.*, unprotected heights, moving machinery) and temperature extremes. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

5. Based on the claimant's age, education, work experience, and the testimony of the VE, there are jobs that exist in significant numbers

---

[1]Medium work involves:

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

2

in the national economy that the claimant can perform such as: hand packager, medium exertion with 75,000 positions available nationally and 10,000 in the state; film retail clerk, light exertion, skilled, with 150,000 positions available nationally and 7,000 in the state; cashier II, convenience store, light exertion, unskilled, with 275,000 positions available nationally and 4,500 in the state; and gate guard, light exertion, semi-skilled, with 125,000 positions available nationally and 4,000 in the state. Thus, the claimant has not been under a disability as defined in the Social Security Act, from July 22, 2003, through the date of this decision (20 C.F.R. § 404.1520(g)).

R. 16-21.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff argues that his case should be remanded for multiple reasons. See generally Pl.'s Br. First, Plaintiff argues that the ALJ's rejection of the opinions of Plaintiff's treating physicians, Jeffrey A. Fried, M.D., and James W. Price, M.D., was not supported by substantial evidence. Id. at 11-16; Pl.'s Reply Br., pp. 2-5. Plaintiff goes on to claim that the ALJ failed to properly apply the dictates of Social Security Ruling ("SSR") 02-1p in evaluating the effects of Plaintiff's obesity on his Residual Functional Capacity ("RFC"), and also erred in concluding that his carpal tunnel syndrome was not a severe impairment. Pl.'s Br., pp. 18-21. Finally, Plaintiff argues that the ALJ erred by improperly discounting evidence regarding the side effects of his medication. Id. at 16-18; Pl.'s Reply Br., pp. 5-8. The Commissioner maintains that: 1) the determination made by the ALJ regarding all physician opinions, including those of Plaintiff's treating

3

physicians, is supported by substantial evidence; 2) the ALJ sufficiently considered Plaintiff's morbid obesity; 3) Plaintiff failed to identify any functional limitations related to his carpal tunnel syndrome that the ALJ did not consider and are supported by the record; and 4) the ALJ properly assessed the credibility of Plaintiff's complaints, including the side effects of his medication. See generally Comm'r's Br.

## II.     THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d

4

at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based on substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Opinion of Treating Physicians

The Court turns first to Plaintiff's allegation that the ALJ lacked substantial evidence for discounting the opinions of Plaintiff's treating physicians, Dr. Fried and Dr. Price. Pl.'s Br., pp. 11-16. Specifically, Plaintiff argues that the ALJ: 1) did not cite to specific records to support his conclusion that Dr. Fried's opinion was not supported by his own treatment notes; 2) failed to consider that both Dr. Fried and Dr. Price are board certified orthopedic surgeons; and 3) erred in relying upon the opinions of non-examining state agency medical consultants and the one-time consultative examination by Vasudev V. Kulkarni, M.D. Id.;

5

R. 19. The Commissioner counters that the record did not contain an opinion by Dr. Price regarding Plaintiff's functional limitations and that the ALJ had good cause for rejecting Dr. Fried's opinion, as it was inconsistent with his own findings and the other findings of record. Comm'r's Br., pp. 16-20. The Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, Plaintiff relies heavily on a Medical Source Statement ("MSS") completed by Dr. Fried on April 17, 2009, to support his disability claim. In this MSS, Dr. Fried opined

that Plaintiff could do less than two hours of standing and walking and about four hours of sitting in a workday, provided that he would be able to change positions and lie down to rest for thirty to forty-five minutes up to twice per workday R. 397-98. He further opined that Plaintiff could occasionally lift and carry up to ten pounds and could never lift and carry anything more than ten pounds. R. 397. Dr. Fried also indicated that Plaintiff could only use his arms, hands and fingers for twenty-five percent of the workday and had constant pain of varying severity in his hands/fingers, hips, legs, and knees/ankles/feet. R. 398-99. Finally, Dr. Fried concluded that Plaintiff could not perform sustained work activity on any level and that it was premature to estimate when or if his level of function could be restored. R. 400.

In explaining his decision to discount Dr. Fried's MSS, the ALJ stated that it was not of "any evidentiary value" as it was "neither consistent with nor supported by objective medical evidence, including [Dr. Fried's] own treatment records." R. 19. The ALJ then cited to the exhibit containing all of Dr. Fried's treatment records. Id. Plaintiff argues that by citing to the entire exhibit, the ALJ failed to cite to any specific records by Dr. Fried which conflict with his findings in the MSS. Pl.'s Br., pp. 13-14. However, Plaintiff's argument ignores the ALJ's review of Dr. Fried's records a scant two pages prior. R. 17.

Specifically, the ALJ noted that Dr. Fried's initial treatment plan in December 2007 consisted of weight reduction, home exercise, and injection of a non-steroidal anti-inflammatory for discomfort. R. 17, 411. This line of treatment is a far cry from the impending knee replacement that Dr. Fried addresses in his MSS. R. 401. The ALJ also noted that when Plaintiff saw Dr. Fried in August 2008, he only reported one fall which occurred in June, and the only modification to Plaintiff's treatment plan was the use of a

7

cane. R. 17, 408. Plaintiff stated that he was sleeping well at night and that his knee gave out occasionally. Id. Yet in Dr. Fried's MSS, completed less than a year later, he opines that Plaintiff had "significant pain and weakness" in both his left and right knee. R. 401. Finally, the ALJ discussed x-rays from April 2009 which Dr. Fried noted only showed "mild medial joint narrowing and slight lateral subluxation of the lateral plateau: not enough to consider knee surgery at this time." R. 17; 402-03. This finding directly conflicts with Dr. Fried's MSS, which he completed a mere eleven days later, in which he stated that the only reasons for delaying knee replacement were Plaintiff's young age and the hope that he would lose weight. R. 401.

Additionally, in discounting Dr. Fried's opinion and formulating Plaintiff's RFC, the ALJ relied on the opinions of non-examining state agency medical consultants which were based, in part, on a consultative exam performed by Dr. Kulkarni. R. 19, 364-80, 388-95. Plaintiff argues that the ALJ's reliance on those opinions is problematic because: 1) the ALJ did not take into account Dr. Fried's specialization as a board certified orthopedic surgeon; and 2) the opinions of the non-examining state agency medical consultants were mostly based on the examination of Dr. Kulkarni because they were made in 2007- two years before Dr. Fried completed his MSS. Pl.'s Br., pp. 12, 14-15. First, Plaintiff's argument regarding Dr. Fried's status as a board certified orthopedic surgeon misses the mark. Plaintiff cites to 20 C.F.R. § 404.1527(d)(5) which states, "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5) (emphasis added). However, Plaintiff's dependency on that single passage ignores the five additional factors enunciated

8

in 20 C.F.R. § 404.1527(d)(1)-(4), (6). More importantly, it ignores the ALJ's ability to discount the opinion of a treating physician like Dr. Fried if it is inconsistent with his own medical records as established above. Lewis, 125 F.3d at 1440.

The Court is similarly not persuaded by Plaintiff's argument that the ALJ erred by using the opinions of non-examining state agency medical consultants to discount Dr. Fried's opinion because they did not "have the benefit of any of Dr. Fried's opinion in reaching their conclusions." Pl.'s Br., p. 13. As an initial matter, it is clear that the ALJ did not solely rely upon the opinions of the state agency medical consultants in discounting Dr. Fried's opinion, as illustrated by his review of Dr. Fried's records in his decision. R. 17. The Court also agrees with the Commissioner's assertion that, even had Dr. Fried's opinion been considered by the state agency medical consultants, their conclusions would have likely remained unchanged due to the conflicts between Dr. Fried's opinion and his treatment notes. Comm'r's Br., pp. 19-20. Additionally, it is clear that the state agency medical consultants considered the treatment notes of Dr. Price, R. 375, 395, and, as the Commissioner pointed out, Dr. Fried's notes document the same, mostly mild symptoms, as recorded in Dr. Price's medical notes prior to 2007. Comm'r's Br., p. 19; see, e.g., R. 326 (noting that a CT scan found only a very mild disk bulge); R. 340 (finding mild crepitance and decreased effusion in the right knee); R. 402 (x-ray showing only mild medial joint narrowing and slight lateral subluxation of the lateral plateau in the right knee); and R. 408 (finding no instability in either knee).

Additionally, under SSR 96-6p, findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated

9

as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Thus, taking into account the ALJ's ability to discount Dr. Fried's opinion due to its inconsistency with his medical records, the ALJ was well within his discretion to assign more weight to those opinions than to Dr. Fried's. Here, the non-examining state agency medical consultants reviewed Plaintiff's case and determined, *inter alia*, that there were credibility issues with Plaintiff's claims in light of the record evidence and that, with restrictions to climbing, stooping, kneeling, crouching, and crawling, Plaintiff could perform what amounted to medium work. R. 373-80; 388-95. These findings are in accord with the ALJ's determination of Plaintiff's RFC. R. 18. Thus, in addition to the discrepancies outlined above concerning Dr. Fried's own treatment records, the opinions of the non-examining state agency medical consultants also weighed in favor of the ALJ's decision to discredit Dr. Fried's MSS.

Plaintiff's argument that the ALJ improperly discredited the opinion of Dr. Price is similarly unpersuasive. Pl.'s Br., pp. 14-16. As an initial matter, the Court agrees with the Commissioner's conclusion that Dr. Price did not provide his medical opinion regarding any specific functional limitations as a result of Plaintiff's impairments. Comm'r's Br., p. 16 n.10. Thus, it appears that Plaintiff is arguing that the ALJ erred by not properly considering Dr. Price's opinion *as revealed by his medical records*, but instead relying on the one-time consultative examination of Dr. Kulkarni. Pl.'s Br., p. 14.

Initially, Plaintiff argues that the ALJ erred by not considering Dr. Price's specialization as a board certified orthopaedic surgeon. Id. Plaintiff's specialization argument fails here for the same reasons that it failed regarding Dr. Fried's opinion, as

discussed *supra*, in that it ignores the five additional factors provided under 20 C.F.R. § 404.1527(d)(1)-(4), (6). Next, Plaintiff asserts that Dr. Kulkarni's examination failed to account for Dr. Price's findings of crepitance in both of Plaintiff's knees, as well as the mild to moderate effusion in his right knee. Id. This argument misses the mark. The important issue is not whether Dr. Kulkarni considered Dr. Price's opinion, but whether the ALJ did.

It is clear from the ALJ's decision that he considered Dr. Price's opinion through multiple sources. First, it is apparent that both of the non-examining state agency medical consultants, whose opinion the ALJ assigned great weight, not only relied on the findings of Dr. Kulkarni, but utilized Dr. Price's records as well. R. 19, 375, 395. In fact, one of the consultants explicitly referenced Dr. Price's records regarding the crepitance and tenderness in Plaintiff's right knee. R. 395. Second, the ALJ explicitly referenced specific findings in his decision from Dr. Price's records- findings that Plaintiff's brief mistakenly suggests were not considered. R. 17; Pl.'s Br., p. 14. These findings indicate that Plaintiff had "crepitus at the patello-femoral articulation bilaterally" and "tenderness to palpation along the medial joint bilaterally" R. 17, 384, 386. In fact, the ALJ goes on to detail other findings from Dr. Price's records that support the ALJ's decision, including a May 2007 MRI which showed no evidence of "central disc protrusions, canal stenosis, or nerve root impingement." R. 17, 381, 384. Additionally, Plaintiff fails to mention that the last indication of effusion in his right knee was in a visit with Dr. Price in January 2006, during which Dr. Price noted that Plaintiff's effusion had decreased. R. 340. That appointment occurred more than a year before Plaintiff's examination by Dr. Kulkarni. R. 340, 364-72. Thus, Plaintiff's argument that the ALJ improperly relied on the opinion of Dr. Kulkarni to the exclusion of Dr. Price's

11

opinion is clearly without merit.

In sum, the Court finds that the ALJ had good cause to discount Dr. Fried's MSS based on inconsistencies with his own treatment notes as well as conflicts with the other opinions of record. The Court also finds that the ALJ properly considered Dr. Price's opinion as revealed by his medical record.

**B.     Whether Plaintiff's Carpal Tunnel Syndrome Constitutes a Severe Impairment**

Next, the Court turns to Plaintiff's contention that the ALJ erred in finding that Plaintiff's carpal tunnel syndrome was not a severe impairment. Plaintiff argues that the ALJ failed to consider all the evidence regarding Plaintiff's carpal tunnel syndrome, including an abnormal EMG/NCS conducted in February 2009 which demonstrated "moderate bilateral, median nerve entrapment at both wrists (right greater than left)." Pl.'s Br., pp. 19-21; R. 413. In turn, the Commissioner argues that Plaintiff failed, and continues to fail to demonstrate how his carpal tunnel syndrome affects his ability to perform basic work activities. Comm'r's Br., pp. 9-10. The Commissioner also argues that, even if the ALJ did err in not finding Plaintiff's carpal tunnel syndrome to be a severe impairment, it was harmless error. Id. at 10-12. For the reasons explained below, Plaintiff has the better argument.

To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a)("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the

abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his physical problems significantly affect his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)(per curiam). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test.

13

Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

In finding that Plaintiff's carpal tunnel syndrome was a non-severe impairment, the ALJ performed the following sparse analysis:

> [Plaintiff's] history of bilateral carpal tunnel syndrome is non-severe. In the March 2007 consultative evaluation examination, [Plaintiff] demonstrated full range of motion of the upper extremities.

R. 16. The problem with this analysis, as correctly pointed out by Plaintiff, is that it ignores other evidence having to do with Plaintiff's carpal tunnel syndrome. Pl.'s Br., pp. 20-21. As pointed out above, the ALJ makes no effort to account for the February 2009 EMG/NCS study which demonstrated "moderate, bilateral nerve entrapment at both wrists." R. 413. The ALJ also fails to address the fact that Dr. Fried prescribed splints and discussed surgical options with Plaintiff as a result of the EMG/NCS study, despite the fact that the ALJ cites to this very information on the next page of his decision. R. 16-17, 402-05. Additionally,

14

the ALJ did not discuss Dr. Fried's treatment records which indicated that Plaintiff complained of a weakened grip and that, upon examination, Dr. Fried found sensation numbness in a median distribution on Plaintiff's right hand. R. 402. Thus, the ALJ's decision does not reflect a consideration of the full record in determining whether Plaintiff's carpal tunnel syndrome qualified as a severe impairment. See McCruter, 791 F.2d at 1548. Therefore, this case should be remanded for further proceedings in accordance with the Court's opinion.[2]

### C.  Failure to Account for Effects of Plaintiff's Obesity

Finally, the Court turns to Plaintiff's argument that the ALJ failed to properly assess Plaintiff's obesity under the standards set in SSR 02-1p. Plaintiff's argument appears to be twofold. First, Plaintiff argues that the ALJ failed to take into account the effects of his obesity on his RFC in light of his high Body Mass Index ("BMI")[3] of 53.2 at the time of the June 2, 2009 hearing. Pl.'s Br., pp. 18-19. Second, Plaintiff argues that the ALJ erred in

---

[2]The Commissioner's argument that, if the ALJ erred in not considering Plaintiff's carpal tunnel syndrome, it was harmless error, is unpersuasive. The Commissioner argues that, even if Plaintiff were functionally limited in his handling ability, he would still be able to perform as a gate guard, as put forth by the VE during the June 2009 hearing. Comm'r's Br., p. 11. The Commissioner goes on to state that the VE testified that 125,000 position existed nationally and 4,000 positions existed in the state for a gate guard, which is more than the amount considered sufficient in past cases. Id. However, as stated *infra*, the Court is also recommending remand based on the ALJ's failure to properly address whether Plaintiff's obesity affected his RFC by exacerbating his other severe impairments. Thus, the hypothetical posed to a VE at subsequent hearings could vary from that posed in the June 2009 hearing, therefore leading to the identification of different occupations. As a consequence, the Commissioner's argument for harmless error cannot stand in light of this Court's recommendation for remand.

[3]BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters. See SSR 02-1p.

failing to consider whether Plaintiff's obesity affected his RFC by exacerbating his other severe impairments. Id. Relying heavily upon this Court's prior decision in Wooten v. Astrue, CV 309-023, doc. no. 13, *adopted by* doc. no. 16 (S.D. Ga. June 21, 2010), the Commissioner argues that the ALJ properly assessed Plaintiff's obesity and took into account the limiting effects of his obesity as indicated by his BMI. Comm'r.'s Br., pp. 12-13.

To begin, the Court notes that the parties do not dispute that Plaintiff suffers from obesity, and the ALJ included obesity as one of Plaintiff's severe impairments. R. 16. As noted above, Plaintiff argues that the ALJ failed to properly apply the tenets of SSR 02-1p in assessing the effects of his obesity. The overarching principle of SSR 02-1p is that, generally, when an individual making a disability claim has a BMI that falls within the Clinical Guidelines of obesity, the individual effects of that person's obesity, as well as the exacerbating effects of obesity on other severe impairments, should be considered in determining whether that individual is disabled. See SSR 02-1p, *2-*6.

SSR 02-1p recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." An ALJ should assess the effect that obesity has on exertional, postural, and social functions, as well as "the effect obesity has on the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. Furthermore, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. In other words, obesity can cause further degradation of Plaintiff's physical capacity, especially in the presence of certain other severe impairments.

See id.

First, the Court addresses Plaintiff's argument that the ALJ failed to properly account for the effects of his obesity on his RFC in light of his placement in the "extreme" obesity category. According to SSR 02-1p, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40." Plaintiff represents that his BMI at the time of the June 2, 2009 hearing was 53.2, thus placing him in the Level III "extreme" obesity category. Pl.'s Br., pp. 18-19. As was the case in Wooten, Plaintiff appears to be arguing that the ALJ did not consider how extreme his obesity was in making his RFC determination. Wooten, CV 309-023, doc. no. 13, p. 20; Pl.'s Br., p. 18. Here, just as in Wooten, Plaintiff's argument misses the mark. As the Court stated in Wooten, "while BMI describes the extent of obesity, it 'do[es] not correlate with any specific degree of functional loss.'" Wooten, CV 309-023, doc. no. 13, p. 20 (quoting SSR 02-1p). The Commissioner also correctly points out that here, as in Wooten, the ALJ relied on the opinions of non-examining state agency medical consultants who took Plaintiff's height and weight into account when concluding that he could perform functions amounting to medium work. Id.; Comm'r's Br., p. 13; R. 19, 373-80, 388-95. Thus, Plaintiff's argument that the ALJ erred in not taking his "extreme" obesity into account when determining Plaintiff's RFC is without merit.

However, Plaintiff's argument that the ALJ failed to properly apply SSR 02-1p by failing to consider how the exacerbating effects of Plaintiff's obesity on his other severe

17

impairments affected his RFC is a different story. Here, the Commissioner's reliance on the prior decision in <u>Wooten</u> breaks down. In <u>Wooten</u>, this Court found that the ALJ was not required to assess the effects of the plaintiff's obesity on her arthritis or lumbar disc degenerative disease when determining the plaintiff's RFC because the plaintiff had failed to present any evidence that: 1) she had been diagnosed with those conditions; and 2) her RFC was more limited than the ALJ indicated, due to arthritis and/or problems with her lumbar spine. <u>Wooten</u>, CV 309-023, doc. no. 13, pp. 19-20. Here, sufficient evidence was presented for the ALJ to determine that Plaintiff had several other severe impairments in addition to morbid obesity, including degenerative joint disease of the right knee, degenerative disc disease of the lumbar spine, and degenerative joint disease of the left foot 5th metatarsal-phalangeal joint. R. 16. Thus, under SSR 02-1p, the ALJ must take into account the exacerbating effect of Plaintiff's obesity on his other severe impairments in determining his RFC.

As noted above, SSR 02-1p requires the ALJ to account for the fact that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Despite the fact that the ALJ determined that Plaintiff's obesity was a severe impairment, there is no indication in his decision that he took into account, when making his RFC assessment, the possibility of additional degradation of Plaintiff's other severe impairments caused by his obesity. <u>See</u> R. 14-21. Nowhere in his decision does the ALJ articulate, in specific or general terms, whether or not Plaintiff's obesity exacerbated his

other severe impairments.[4] See id. While it is true that the ALJ relied on the opinions of the non-examining state agency medical consultants that took into account Plaintiff's height and weight when assessing Plaintiff's RFC, that does not lead directly to the conclusion that those opinions accounted for the possibility that Plaintiff's obesity caused additional degradation of his severe conditions, thereby affecting his RFC.[5] Additionally, the mention of Plaintiff's height and weight in those opinions does not relieve the ALJ of his duty to provide a clear and well-articulated description of the process behind his determination of Plaintiff's RFC. After all, the question is not whether the non-examining state agency medical consultants took Plaintiff's obesity into account as to its effect on his RFC by possibly exacerbating his other severe impairments, it is whether the ALJ did so.

The Court must review the decision as delivered by the ALJ, but here the Court is unable to perform any meaningful judicial review because the ALJ simply did not make his thought processes known in his decision. See Hudson v. Heckler, 755 F. 2d 781, 786 (11th Cir. 1985) (noting that in the absence of stating specifically the weight accorded each item of evidence, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence). Stated otherwise, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner via the ALJ. Martin, 748 F.2d at 1031. Indeed, as noted

---

[4]In fact, despite the fact that the ALJ acknowledges Plaintiff's obesity as a severe impairment, he does not cite a single time to SSR 02-1p. See R. 11-21.

[5]The Court notes that the ALJ did state that Plaintiff could not "bend, kneel, squat, crawl, or climb stairs or ramps more than occasionally and [could] never climb ladders and scaffolds . . ." R. 18. However, there is no indication that these limitations were based on the exacerbating effects of Plaintiff's obesity on his other severe impairments.

above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). Thus, on remand, the ALJ should make explicit findings regarding whether Plaintiff's obesity affected his RFC by exacerbating his other severe impairments.[6]

## IV. CONCLUSION

For the reasons described above, the Court **REPORTS** and **RECOMMENDS**,

---

[6]The Court is aware of Plaintiff's argument that the ALJ improperly discounted the evidence regarding the side effects of Plaintiff's medication. Pl.'s Br., pp. 16-18; Pl.'s Reply Br., pp. 5-8. However, in light of the recommendation for remand based on the ALJ's failure to properly explain his analysis regarding Plaintiff's obesity and carpal tunnel syndrome, the Court need not resolve this issue. Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all aspects. For example, an ALJ fails in his duty to develop the record when he does not make findings about the effect of prescribed medication on a claimant's ability to work. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981) (stating that an ALJ should at least make a finding on a claim regarding side effects in order to make it possible for a reviewing tribunal to conclude that the claim was not ignored); see also Lacy v. Barnhart, 309 F. Supp.2d 1345, 1352 (N.D. Ala. 2004).

Additionally, any credibility determinations made upon remand about the extent of such an impact of medicinal side effects on the ability to work must comport with the legal standards applicable in this Circuit. Under the Eleventh Circuit's pain and subjective complaints standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). That is, "[t]he credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED AND RECOMMENDED this 29th day of March, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE